**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOAQUIN TORRES,**

           **Plaintiff,**

**-vs-**                                                                                       **Case No. 6:12-cv-697-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

           **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Although oral argument was requested by Plaintiff's counsel, it would not provide any further assistance in reaching a decision.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

**I.     BACKGROUND**

    **A.     Procedural History**

Plaintiff filed for a period of disability and disability insurance benefits on October 28, 2008, alleging an onset of disability on April 18, 2008, due to pinched nerve in his neck and infusion/carpal tunnel. and high blood pressure. R. 123-24, 130. His application was denied initially and upon

reconsideration. R. 1-5. Plaintiff requested a hearing, which was held on November 8, 2010, before Administrative Law Judge Mary C. Montanus (hereinafter referred to as "ALJ"). R. 31-52. In a decision dated December 10, 2010, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 11-25. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 6-7. The Appeals Council denied Plaintiff's request on March 20, 2012. R. 1-3. Plaintiff filed this action for judicial review on May 8, 2012. Doc. 1.

### B.    Medical History and Findings Summary

Plaintiff was born on December 20, 1963, and thus was 44 years old when he applied for benefits and was 46 years old when the ALJ rendered her decision. R. 123. Plaintiff dropped out of school in the ninth grade and worked as a security guard, custodian, and bakery manager. R. 34-38.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of a pinched nerve in his neck in addition to infusion/carpal tunnel/high blood pressure following an injury at work in April 2008; he underwent fusion surgery in July 2008 with persistent pain leading to a second surgery to remove fragments in October 2008. R. 123-24, 130, 228, 248-65. In July 2009, Plaintiff was involved in a motor vehicle accident which further aggravated the issues with his back. R. 718-20.

After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative disk disease of the cervical, thoracic and lumbar spine; bilateral shoulder impingement syndrome; history of carpal tunnel syndrome; coronary artery disease; and depression, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 13. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, except he cannot crawl, or climb ladders, ropes or scaffolds, crawl or perform overhead work; and should avoid work at unprotected heights or with dangerous moving

machinery; he also could not perform work requiring constant handling or fingering and was limited to simple routine work. R. 15.  Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 24. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as an order clerk, food and beverage; surveillance system monitor; and a ticket seller. R. 25, 50.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 25.

Plaintiff now asserts two principal points of error.  First, he argues that the ALJ erred in rejecting the opinion of Plaintiff's treating orthopedist, Dr. Gallo, that Plaintiff's impairments would functionally restrict him to effectively prevent him from performing sedentary work.  Second, he claims the ALJ erred in the hypothetical to the VE by not including all of Plaintiff's limitations and by failing to elucidate any conflicts with the Dictionary of Occupational Titles.  For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## II.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III. ISSUES AND ANALYSIS

### A. RFC and the treating physician's opinion

Plaintiff claims that the ALJ improperly rejected the opinion of Plaintiff's treating orthopedist, Dr. Gallo, who opined Plaintiff effectively could not stand/walk or sit in combination long enough to complete a full eight-hour workday. The Commissioner contends the ALJ properly evaluated the physician opinion evidence.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

In this case, Dr. Gallo opined Plaintiff could stand or walk less than one hour, sit less than one hour at a time or four hours during the entire day, lift/carry less than ten pounds, and never repetitively grasp, handle, push or pull in an eight-hour workday. R. 678-79. The ALJ rejected the opinion of Dr. Gallo, finding:

> Dr. Gallo opined in a physical therapy evaluation form dated October 9, 2009 that the claimant is limited to sitting, standing and/or walking less than 1 hour in an 8-hour work day, and lifting less than 10 pounds. Dr. Gallo noted the claimant cannot push and pull, grasp or handle with the hands, and cannot use his feet for repetitive movements. Dr. Gallo noted the claimant can never bend, kneel, squat, crawl, climb

>stairs, or climb ladders. Dr. Gallo indicated the claimant is unable to maintain a regular work schedule due to pain, the need to lie down at unpredictable times during the day, the need to change positions while sitting due to pain, and recurrent debilitating headaches (Exhibit 15F).
>\* \* \*
>Little weight is given to the opinion of orthopaedist Dr. Gallo who opined the claimant is limited to sitting, standing and/or walking less than 1 hour in an 8-hour workday, and lifting less than 10 pounds. Dr. Gallo also opined the claimant is unable to maintain a regular work schedule due to pain, the need to lie down at unpredictable times during the day, the need to change positions while sitting due to pain, and recurrent debilitating headaches (Exhibit l5F). This assessment was made 3 months after the July 2009 motor vehicle accident and may reflect an exacerbation due to the injuries received, but it is inconsistent with and not supported by a longitudal review of the entire medical record and well as Dr. Gallo's reported findings of full strength and normal gait. It is also not consistent with the subsequent findings of only mild radiculopathy and no nerve root compression on cervical imaging. Although there is evidence of shoulder impingement, significant limitations in lifting and carrying, as well as overhead work have been included in the residual functional capacity. The claimant reported that he continues to drive and does some shopping and he was noted to be able to sit through the hearing without the appearance of significant distress.

R. 20, 23.

Plaintiff contends the ALJ's specified reasons for rejecting Dr. Gallo's opinion fall well short of constituting good cause for refusing to afford substantial weight to Dr. Gallo's opinion. Plaintiff also argues that, in improperly rejecting Dr. Gallo's opinion, the ALJ also committed several related errors. Plaintiff argues that the ALJ should not have discounted Dr. Gallo's opinion based on the reasoning that the physician's assessment "was made 3 months after the July 2009 motor vehicle accident and may reflect an exacerbation due to the injuries received." He argues that his July 2009 automobile accident worsened his condition should have led the ALJ to consider whether he was disabled as of July 2009, even if he was not disabled as of his earlier, alleged onset date.

The Commissioner argues that the ALJ recognized that Plaintiff had significant work-related limitations and accounted for those limitations in the RFC finding when she found Plaintiff limited to sedentary level work with an inability to crawl, climb ladders, scaffolds, or ropes; a need to avoid unprotected heights and dangerous moving machinery; and an inability to do constant handling or

fingering. The Commissioner contends that the ALJ properly considered all of the medical evidence, appropriately resolved conflicts in formulating Plaintiff's RFC, and the ALJ's decision was based on substantial evidence. The Commissioner argues the ALJ stated good cause for giving Dr. Gallo's opinion little weight, namely that it was inconsistent with the longitudinal picture presented by Plaintiff's medical records. Plaintiff contends that the ALJ conceded that Dr. Gallo's opinion could be accurate as it "may reflect an exacerbation" as a result of the collision, but, at the same time, the ALJ made the unsupported finding that the exacerbation was only "temporary" and did not last for the 12 months required to qualify as a disabling level of limitation. *See* 20 C.F.R. § 404.1505(a) (disabling limitation resulting from a physical or mental impairment hat lasts or can be expected to last for at least 12 months confers benefit eligibility).

The longitudinal record in this case indicates Plaintiff had significant back, neck, and shoulder problems for which he received consistent treatment, but were exacerbated by injuries received in a July 2009 car accident. Prior to receiving treatment from Dr. Gallo as a result of a July 2009 car accident, Plaintiff had undergone surgeries for carpal tunnel release and right rotator cuff repair in 1998, right shoulder revision surgery in 2006, discectomy and fusion at C7-T1 in July 2008, and left foraminotomy at C7-Tl in October 2008. R. 264. The most recent set of surgeries followed Plaintiff's injury at work in April 2008, when he was picking up and carrying a 5-gallon jug of water. R. 258, 264. He experienced immediate shoulder and neck pain, and pain throughout his entire left upper extremity with some associated numbness and tingling. R. 264. Dr. Richard L. Shure, M.D. of Jewett Orthopaedic Clinic examined Plaintiff on May 21, 2008, and noted neck pain, bilateral shoulder pain, left elbow pain, and left upper extremity numbness and tingling. R. 264. A June 2008 MRI scan of the cervical spine showed significant foraminal narrowing to the left at C7-T1, but MRI scans of the left shoulder and elbow were normal. R. 265, 274, 277.

On June 16, 2008, Dr. Shure opined he did not think Plaintiff was a very good surgical candidate because he had objective abnormalities that might cause irritation and compression in the C8 nerve root distribution, but he had subjective symptoms in the C7-8 nerve root distribution bilaterally which made it less likely that his symptoms were coming from the abnormalities seen on his neck.  R. 257, 265, 278.  At that time, Dr. Shure recommended physical therapy and a trial of traction, not surgery, and lifting restrictions to avoid aggravating Plaintiff's "pinched nerve in the neck."  R. 257, 259.  Initially, Dr. Shure thought that Plaintiff's symptoms did not correlate very well with his MRI; however, his impairment became more specific to a C8 radiculopathy as a major component of his symptoms. R. 254. Plaintiff reported on July 7, 2008, that his arm pain was the greater symptom and Dr. Shure advised him that the numbness sensation in the back of the head. and interscapular area was not likely to improve with surgery but the symptoms down the arm of numbness and pain which appeared to be the major component very likely could improve after surgery.  R. 254.  Progress notes dated July 7, 2008 indicated that physical therapy increased Plaintiff's reported symptoms, and he was not responding to conservative measures, therefore the surgery was offered. R. 271. Plaintiff elected surgery, and on July 23, 2008, underwent a discectomy and fusion at C7-Tl, performed by Dr. Beckner.  Findings during the surgery indicated a very narrowed foramen on the left side secondary primarily to uncovertebral joint hypertrophy.  R. 271.

At the follow up appointment in August 2008, Plaintiff reported continued symptoms in the left arm with numbness in the ulnar distribution and pain around the left shoulder. R. 251. On September 4, 2008, Plaintiff continued to report significant pain in the left arm, numbness in the C8 distribution, and difficulty swallowing, and a new MRI scan of the cervical spine on September 29, 2008 revealed continued foraminal stenosis at C7-T1.  R. 266.  An MRI of the cervical spine from September 22, 2008 showed a left foraminal disc protrusion with severe left foraminal stenosis with impingement of the left C8 nerve root.  R. 269.  On October 29, 2008, Plaintiff underwent a left

-8-

foraminotomy of C7-T1 to remove residual disk fragments and relieve compression of C8 nerve root. R. 266.

On his follow up visit from the second surgery in November 2008, Plaintiff showed improved sensation in the hand but continued to have pain across the back. R. 246. Dr. Beckner opined Plaintiff was doing reasonably well and would continue to improve and anticipated he would be able to resume modified work in three weeks. R. 246. On January 15, 2009, Plaintiff returned to Jewett Orthopaedic Clinic to see Dr. Beckner. R. 315. Plaintiff had returned to work as a security guard and was apparently on a bus that took off and he stumbled and fell forward. R. 315. Plaintiff reported increased neck pain radiating down the left arm in the C8 distribution of the left hand, and right shoulder pain. R. 315. On physical examination, neck range of motion was good, there was no weakness in the left upper extremity, and there was diminished sensation in the little, ring, and middle fingers of the left hand, but no intrinsic atrophy was noted. R. 315. Dr. Beckner opined Plaintiff was reaching a stable situation and that he would potentially improve in the future; he was restricted to no overhead work, a fifteen-pound lifting limit, no climbing, and occasional squatting and bending. R. 315.

At a consultative medical examination on April 20, 2009, Dr. Glenn Agans noted Plaintiff's history of chronic neck pain, chronic shoulder pain, and status post carpal tunnel release which might inhibit his ability to handle or manipulate small objects on a repetitive basis, and he opined Plaintiff was unable to do any heavy labor, prolonged standing or walking, heavy lifting, or repetitive bending, pulling, pushing, stooping, crawling, or climbing, but that Plaintiff should be able to do some work related task involving understanding, memory, concentration, persistence, social interaction, and adaptation. R. 609. Plaintiff was in a car accident on July 31, 2009 where he was jolted backwards and then forwards at impact; within the week he began treatment with Dr. Keith Massi, a chiropractic physician, who evaluated him and treated him with chiropractic adjustments, massage, hot packs,

-9-

electrical stimulation, stretching, and exercise for three months, but the therapy was not helpful. R. 791. A cervical spine MRI was ordered which revealed surgical changes following the fusion surgery and disc bulging at several levels, as well as a disc herniation on the left. R. 791. Dr. Massi subsequently referred Plaintiff to Dr. Gary Gallo, an orthopedic physician. R. 686.

Plaintiff argues Dr. Gallo's records are replete with findings supportive of his opinion, and the ALJ erred in finding that his opinion regarding Plaintiff's pronounced limitations is "inconsistent" with his other "reported findings of full strength and normal gait." R. 23. On October 9, 2009, Plaintiff began treatment from Dr. Gallo, when he presented with complaints including headaches and pain of the shoulders, lower back, and neck. R. 686. Plaintiff explained that he had been injured in a car accident on July 31, 2009 and that pain continued to interfere with his activities, including sleep. R. 686-87. Dr. Gallo noted tenderness in the cervical spine and both shoulders, limited range of motion, and decreased sensation in his fingers. R. 688-89. After reviewing MRIs of the cervical and thoracic spine from September 2009 and x-rays of the right shoulder, cervical, thoracic and lumber spine from August 2009, Dr. Gallo agreed with the radiologist, who found abnormalities including disc bulging at multiple levels of the cervical and thoracic spine (C3-7, T1-4, T6-10); right neural foraminal stenosis; "[d]isc herniation at C7/T1 with severe left neural foraminal stenosis"; sinus disease; neural encroachment; herniations at T7/8 and T8/9; narrowing of L5/S1, C4/5 and C5/6 disc spaces; and facet arthropathy with spondylosis. R. 689; *see also* R. 642-50, 725-38. Apart from disc bulging and herniations, Dr. Gallo diagnosed Plaintiff with cervical sprain/strain-aggravated and superimposed upon a previous injury; postsurgical changes following anterior cervical fusion at C7/T1; lumbosacral sprain/strain; posttraumatic headaches; and contusion of the left and right shoulders. R. 690. Dr. Gallo recommended that Plaintiff undergo further MRIs and attempt home stretching and exercise. R. 690.

Also on October 9, 2009, Dr. Gallo completed a Physical Capacity Evaluation, opining that Plaintiff could, in an eight-hour workday, stand or walk less than one hour, sit less than one hour at a time or four hours during the entire day, lift/carry less than ten pounds, and never repetitively grasp, handle, push or pull, and could not bend, kneel, squat, crawl, or climb stairs or ladders. R. 678-79. Dr. Gallo noted that Plaintiff experienced constant severe pain and he was unable to maintain a regular work schedule because of the pain; he must lie down at unpredictable times due to pain, must change positions while sitting, and suffers from recurrent debilitating headaches. R. 680.

On Plaintiff's next visit to Dr. Gallo on October 15, 2009, additional MRIs and physical examination showed tenderness, restricted range of motion, decreased sensation, more disc bulging and herniation, stenosis, positive impingement signs of both shoulders, and hypertrophic changes at the acromioclavicular joints. R. 683-84. In addition to continuing to recommend exercises to be performed at a level that would not aggravate the pain, Dr. Gallo prescribed Lortab, a Medrol dosepak and a home cervical traction device. R. 685. Plaintiff complained of continued pain and headaches on November 5, 2009, and Dr. Gallo prescribed Oxycodone and also administered cortisone injections into both shoulders, which produced short-term relief. R. 681-82. Even though there was considerable evidence of Plaintiff's limitations in Plaintiff's spine and shoulders, as Plaintiff argues, the ALJ singled out two findings – normal gait and strength – in the lower extremities to negate Dr. Gallo's assignment to Plaintiff of functional limitations. As such, the ALJ's rejection of the opinion of Plaintiff's treating orthopedist was not based on substantial evidence.

Plaintiff argues that it appears the ALJ may have presumed, without sufficient explanation, that after a few months Plaintiff's condition improved to the level it had been prior to the accident, which the ALJ found allowed for the performance of sedentary work. Plaintiff contends the record shows that his serious difficulties continued based on chiropractic records from Dr. Massi from January 2010 which reported ongoing symptoms and diagnoses. R. 718. Dr. Massi noted that damage,

stretching, and tearing of the cervical, thoracic, and lumbar connective tissues produced scar tissue that continued to be "a source of irritation and re-injury." R. 718.  Plaintiff also cites records from Osceola County Health Department from 2010 which documented ongoing neck and back pain, headaches, and treatment with narcotic pain medication. R. 774-86.

Plaintiff argues that the evidence of Record does *not* indicate Plaintiff's post-accident condition actually improved to the point that he could work, and the ALJ notably did not obtain an updated RFC assessment for the period subsequent to the accident.  Plaintiff argues that the ALJ's rejection of Dr. Gallo's opinion represents a rejection of the only detailed medical opinion pertaining to Plaintiff's functional limitations for the period after July 2009.

Plaintiff's administrative hearing did not take place until November 2010, and the ALJ issuing her decision in December 2010; however, instead of relying on Dr. Gallo's October 2009 opinion (which itself was one year old), the ALJ relied upon outdated assessments rendered prior to the July 2009 collision, including the opinion of the non-examining state agency physician, Dr. Patel.  Dr. Patel opined in May 2009 that her RFC assessment of Plaintiff was a projection of future capabilities: "He is showing progressive improvement on exam with time, and by one year from date of last surgery, he is projected to be able to perform this RFC."  R. 639.  As Plaintiff points out, Dr. Patel's RFC was based on an assumption of improvement after surgery but no updated assessment was obtained in regard to whether the improvement in fact occurred.

The Commissioner contends that the ALJ recognized Dr. Gallo's assessment was made three months after Plaintiff's July 2009 motor vehicle accident, may have reflected an exacerbation due to the injuries received, and was inconsistent with and not supported by a longitudinal review of the entire medical record, including Dr. Gallo's own findings. Doc. 23 (citing R. 23).  The Commissioner argues that the ALJ reviewed the medical evidence of record and her detailed discussion of these records demonstrates why Dr. Gallo's October 2009 opinion of severe limitations was out of step with

the evidence in the case. R. 17-23. However, as Plaintiff points out in his Reply brief (Doc. 27), the ALJ's citation or summary of the physician's notes, standing alone, cannot substitute for analysis of the meaning of the notes. The Commissioner makes the same mistake, citing a good deal of evidence including Dr. Beckner's opinion[1] (R. 22, 315-16) and Dr. Agans' opinion (R. 18, 609), both of which were made before Plaintiff's July 2009 car accident – an event which the ALJ conceded "exacerbated" Plaintiff's symptoms. *See* R. 23. The Commissioner merely reviews the pre-July 2009 evidence and restates the ALJ's superficial description of the post-July 2009 evidence, with the argument: "While the ALJ's discussion of the medical evidence, outlined above, shows that Plaintiff obviously had significant, work-related limitations, the severe limitations opined by Dr. Gallo went beyond the objective evidence in this case." Doc. 23 at 17; Doc. 23 at 18 ("[T]he ALJ's review of the medical evidence, discussed above, explains in detail why the ALJ found Plaintiff was not disabled at any point in the period under consideration (Tr. 17-23)"). However, the Commissioner fails to point to any analysis performed by the ALJ, other than the general citation to evidence from Dr. Roberts and Dr. Shea post-July 2009, without any analysis or commentary by the ALJ.

According to the Record, the post-accident evidence from Dr. Roberts and Dr. Shea in May 2010 indicate that Plaintiff continued to have multiple disc herniations and radiculopathy issues. Dr. Roberts evaluated Plaintiff on May 4, 2010, nearly a year after the accident (when he had been receiving treatment from the chiropractor Dr. Massi) and noted tenderness throughout Plaintiff's spine, with limited range of motion and positive Phalen's test and Tinel's signs in both wrists and elbows. R. 787. Plaintiff reported that sitting made his pain worse, but lying down reduced it. R. 789. Based on MRI reports, Dr. Roberts diagnosed multiple disc herniations at T7-8 and T8-9, cervical and

---

[1] Plaintiff points out that Dr. Beckner, meanwhile, was not specifically asked to address his capacity for standing, walking, or sitting, did not render an updated opinion, and did not provide significant supporting documentation. R. 315-16. The ALJ's mischaracterized Dr. Beckner's opinion as Plaintiff "would potentially improve in the future" (R. 21), when in reality Dr. Beckner wrote Plaintiff "could potentially improve in the future, but I am not optimistic at this point." R. 315.

-13-

lumbosacral strain, L5-S1 strain and herniation, bilateral nerve entrapment or cervical radiculopathy, and bilateral rotator cuff impingement. R. 788. Dr. Shea of the Physical Medicine Pain Center performed a consultation and electrodiagnostic studies on May 19, 2010; Plaintiff's symptoms included daily headaches, pain radiating into shoulders and down his arms, numbness and tingling of the hands and fingers, and arm numbness; low back pain radiates into his right leg with muscled cramping and tingling in his right toes. R. 791. The following month, Plaintiff continued to have pain despite two epidural steroid injections to his shoulders, and plans were made for arthroscopic subacromial decompression surgery of the left shoulder and possibly the "same on the right." R. 788; *see also* R. 791 (noting daily headaches, pain, numbness and tingling of the hands and fingers, and arm numbness). Dr. Shea noted the MRI of the cervical spine from September 2, 2009 revealed post-surgical changes following anterior cervical fusion at C7-T 1; disc bulging at C3-4, C5-6, and C6-7, most severe at the C6-7 level; left posterolateral disc herniation at C7-T1; and neural encroachment with reduced cervical range of motion. R. 793. Electrodiagnostic studies suggested mild C5 radiculopathy probably secondary to neuroforaminal encroachment of the C5 nerve roots at the time of impact in his motor vehicle accident. R. 793. Neither Dr. Roberts or Dr. Shea completed an RFC form or were requested to assess Plaintiff's functional limitations. The ALJ's rejection of Dr. Gallo's opinion on the basis of "subsequent findings of only mild radiculopathy and no nerve root compression on cervical imaging"–presumably from Dr. Roberts and Dr. Shea–was not based on substantial evidence.

Plaintiff argues that if Dr. Gallo's improperly rejected RFC opinion as to stooping is taken as true, then Plaintiff would clearly be considered disabled because a complete inability to stoop significantly erodes the unskilled sedentary occupational base and a finding that the individual is

-14-

disabled would usually apply, *see* SSR 96-9p[2], thus, pursuant to the VE's testimony (R. 51), the limitations found by Dr. Gallo would preclude work. Doc. 25 (citing *Powell v. Astrue*, Case No. 8:08-cv-135-T-TBM, 2008 WL 465031 (M.D. Fla. Feb. 24, 2009) (reversing where the ALJ had failed to properly consider whether the claimant was limited to no stooping)). In this case, no physician has assessed Plaintiff's functional ability since the July 2009 car accident and treatment. Reversal with remand is more appropriate for the ALJ to properly consider Dr. Gallo's opinion and obtain updated opinions from Plaintiff's other treating physicians if warranted.

### B.     Hypothetical to the VE

Plaintiff argues that the ALJ's hypothetical question to the VE was defective in that it failed to comprehensively account for all of Plaintiff's physical limitations, because the ALJ failed to incorporate the limitations in Dr. Gallo's opinion. On remand, the ALJ will be required to pose a new hypothetical incorporating all of Plaintiff's physical limitations.

Plaintiff also argues that the ALJ erred in failing to fully account for Plaintiff's moderate mental limitations in concentration, persistence, and pace. The Commissioner argues that the ALJ properly concluded the findings of Dr. Austin and the lack of a history of any mental health treatment supported a conclusion that Plaintiff could perform work that involves only simple routine tasks and complied with *Winschel*, 631 F.3d 1181. Doc. 23 at 23 (citing R. 23, 605-06).

The ALJ concluded that "the findings of Dr. Austin and the lack of a history of any mental health treatment support a conclusion that the claimant can perform work that involves only simple routine tasks." Although the ALJ noted Dr. Austin's consultative psychological evaluation of Plaintiff

---

[2]SSR 96-9p specifically provides:
A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.
SSR 96-9p, 1996 WL 374185 (S.S.A. 1996).

n/a
n/a

n/a

n/a

on April 20, 2009, the ALJ failed to discuss or incorporate the short-term memory impairments that Dr. Austin assigned to Plaintiff. Instead, the ALJ merely noted the part of Dr. Austin's opinion that Plaintiff had no impairment in "recent or remote memory" and completely failed to incorporate any limitations regarding "short-term memory" problems or limitation to a "low stress setting." R. 23 (discussing R. 605-06). The ALJ also discounted the state agency psychologist's opinion that Plaintiff had moderate limitations in sustained concentration, persistence, and pace. R. 616-17. The ALJ must properly account for Plaintiff's limitations in concentration, persistence, and pace in the hypothetical to the VE. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-1181 (11th Cir. 2011). On remand, the ALJ will obtain a new consultative psychological evaluation, with particular attention paid to Plaintiff's "short term memory," concentration, persistence, and pace limitations, and incorporate any such limitations in the hypothetical to the VE, if warranted.

Plaintiff additionally argues that the ALJ erred in failing to ask the VE whether her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), as required. The Commissioner concedes that the ALJ did not specifically ask the VE at the hearing if her testimony was consistent with the DOT (R. 45-51), but argues this was harmless error because "the whole tenor of the VE's testimony clearly indicated that her testimony was informed by the DOT." Doc. 23 at 24. The Commissioner argues the ALJ was entitled to consider the Specific Vocational Preparation levels required of each job; however, the ALJ's decision fails to indicate she considered these levels.

Plaintiff argues that two of the three jobs identified by the VE require level three reasoning, whereas the third requires level two reasoning, and these levels appear to be inconsistent with the ALJ's finding acknowledging that Plaintiff "is limited to simple routine work." R. 15. *See Akins v. Commissioner of Social Security*, Case No. 6:08-cv-1575-Orl-DAB, 2009 WL 2913538, at *5 (M.D. Fla. Sept. 10, 2009) ("While not entirely clear, it does appear that the DOT descriptions are not consistent with opinion of the VE that a claimant limited to simple repetitive tasks could perform

-16-

work at reasoning level 2 and 3. At the very least, the record does not indicate any explanation as to how the hypothetical claimant limited to only simple repetitive tasks could perform any of these occupations, as described by the DOT."). On remand, the ALJ will explain through the VE or otherwise how a hypothetical claimant, if limited to "only simple routine tasks" in a "low stress setting" (as applicable) could perform the other occupations in the national economy, as described by the DOT or through another acceptable method. *See Akins*, 2009 WL 2913538, at *5.

## IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on September 3, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record